UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>        Plaintiff,<br><br>    v.<br><br>AHMAD WAGAAFE HARED,<br><br>        Defendant. | Case No. 3:19-cr-00040-WHO-1<br><br>**ORDER DENYING MOTIONS TO REOPEN SENTENCING OR AMEND RESTITUTION**<br><br>Re: Dkt. Nos. 174, 191, 207 |
| USA,<br><br>        Plaintiff,<br><br>    v.<br><br>MATTHEW GENE DITMAN,<br><br>        Defendant. | Case No. 3:19-cr-00040-WHO-2<br><br>Re: Dkt. Nos. 174, 191, 207 |
| USA,<br><br>        Plaintiff,<br><br>    v.<br><br>ANTHONY FRANCIS FAULK,<br><br>        Defendant. | Case No. 3:19-cr-00676-WHO<br><br>Re: Dkt. Nos. 92, 94 |

In the three underlying criminal cases, the defendants pleaded guilty to stealing cryptocurrency tokens from various victims. The victims at issue in this order filed claims with the government for remission of stolen property and provided information about the value of their stolen property. They did not, however, participate in the restitution process. Apparently, the government's remission and restitution teams did not share information, and so the government's ultimate request for restitution for these two victims did not include the valuations that the victims

provided the remission team. At the defendants' sentencing hearings, I entered restitution numbers that reflected what the government sought in restitution, not the much higher numbers that the victims sought in remission.

The victims now move to reopen sentencing or amend the restitution orders, seeking in restitution the higher amounts that they sought via remission. But to amend a restitution order that has already been entered, the victims must show that they "subsequently discovered further losses" and that there was good cause for not including those losses in their initial restitution requests. Because it is not clear that they can show subsequent discovery of further losses—they have known the value of their losses for years—they cannot meet the statutory requirements for amending the restitution orders. For those and the below reasons, the requests are denied. If I had discretion to grant their motion, the equities weigh in their favor. Nothing in this Order precludes the victims from filing for writs of mandamus in the appellate court.

## BACKGROUND

### I. UNDERLYING CRIMINAL ACTIVITY

These motions relate to the criminal cases of three defendants: Ahmad Wagaafe Hared, Matthew Gene Ditman, and Anthony Francis Faulk. Each pleaded guilty to federal crimes related to stealing cryptocurrency from multiple victims. Broadly, the defendants used various methods, including identity theft, to steal login information and passcodes from victims, access victims' virtual wallets, and transfer currency like Ethereum to the defendants' control. The defendants quickly changed the form of their stolen coins to other virtual currencies or to cash, buying expensive luxuries that were later recovered by the government.

Hared and Ditman both pleaded guilty to conspiracy to commit computer fraud and abuse, in violation of 18 U.S.C. § 1030(b), and to aggravated identify theft, in violation of 18 U.S.C. § 1028A(a)(1). [Dkt. Nos. 153, 172[1]]. Faulk pleaded guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. [Faulk Dkt. No. 83]. In the Northern District of Georgia, Faulk

---

[1] "Dkt. No." refers to the combined docket in case no. 19-cr-00040-WHO, *United States v. Hared* and *United States v. Ditman*. "Faulk Dkt. No." refers to the docket in case no. 19-cr-00676, *United States v. Faulk*.

2

also pleaded guilty to money laundering offenses arising from the same underlying conduct, with total restitution set at $9.16 million.  Faulk PSR [Faulk Dkt. No. 76] ¶¶ 63 n.9, 111–12.

Hared was sentenced on August 31, 2023, and no victims attended.  *See* [Dkt No. 153].  Ditman was sentenced on October 12, 2023, and no victims attended.  [Dkt. No. 169].  Faulk was sentenced on August 17, 2023, and three victims—not the ones at issue in this Order—submitted impact statements, but none attended.  [Faulk Dkt. No. 82].  Based on the PSRs, the sentences I imposed for each defendant affirmed their joint and several liability for restitution of $40,000 to victim NA and $43,000 to victim JD.  Hared PSR [Dkt. No. 142] ¶¶ 96; Ditman PSR [Dkt. No. 159] ¶ 98; Faulk PSR at pdf 36.

## II.    THE VICTIMS' PARTICIPATION IN THE INVESTIGATIONS

Victims JD and NA both participated in the federal investigation and provided government officials with information about their stolen property.  It is undisputed that both JD and NA participated in the remission process by giving information to the FBI about how much Ethereum ("ETH") was stolen, and they provided the "wallet numbers" from which the Ethereum were taken.  *See* [Dkt. No. 183-1] Ex. A (JD's complaint referral form, noting that $43,000 was taken from an Ethereum account ending in -434566); [Dkt. No. 183-1] Ex. B (JD's Petition for Remission/Mitigation Form filed with the DOJ on March 30, 2021, noting that 134.535 ETH worth $249,158.00 was stolen from his wallets ending in -757Ff4c and -cbf73e69, with links to the receipts on the Ethereum webpage); [Dkt. No. 191-1] Ex. 3 (NA's Petition for Remission/Mitigation form filed with the DOJ on February 29, 2020, noting that 4080.3 ETH worth, at that time, $910,845.36 was stolen from wallet ending in -434566).  NA provided the FBI with documentation that he owned the wallet number and specific number of Ethereum that he now requests in his motion.  *See* [Dkt. No. 191-1] Ex. 3.  JD provided documentation of his ownership in a supplemental brief.  [Dkt. No. 192] Ex. A.

Additionally, JD and NA both received communications from the U.S. Attorney's Office with updates about the cases, including about guilty pleas and case schedules.  [Dkt. No. 183-1] Exs. C, G.  They also each received specific notifications about the sentencing hearings, which included an explanation of their rights as victims under 18 U.S.C. § 3771(a); the date, time, and

3

location of the sentencing hearing; their optional right to attend and speak at the hearing; their optional right to provide a victim impact statement as well as the role of the statement in sentencing; a note that if they were "requesting restitution for any financial losses sustained as a result of the conduct charged," they should "submit proof of your loss with all supporting documents (i.e. receipts, bank statements, etc.)" and that this "may be your final opportunity to submit proof of loss to substantiate an Order of Restitution"; and a note that "all loss claims must be proven or verified by the parties in order to constitute a restitution award." [Dkt. No. 183-1] Exs. E, F, H, I, J.

Neither JD nor NA participated in the restitution process. They did not provide victim impact statements, submit proof of loss in response to the communications, or attend or speak at the hearings.

Now, they both seek to reopen sentencing or in the alternative to amend the restitution orders. ("JD Mot.") [Dkt. No. 174; Faulk Dkt. No. 94]; ("NA Mot.") [Dkt. No. 191; Faulk Dkt. No. 92]. Ditman opposed. ("Ditman Oppo.") [Dkt. No. 181-1]. Faulk opposed. ("Faulk Oppo.") [Faulk Dkt. No. 104]. The government filed a response to JD's motion, ("Gov. JD Resp.") [Dkt. No. 183], and filed a non-opposition to NA's motion, [Faulk Dkt. No. 103]. The victims replied. ("JD Repl.") [Dkt. No. 192; Faulk Dkt. No. 106]; ("NA Repl.") [Dkt. No. 201; Faulk Dkt. No. 110].

I held a status conference at which I deferred ruling on the motions to allow time for supplemental briefing, because Hared had recently been appointed new counsel who had not had time to respond to the motions. [Dkt. No. 190; Faulk Dkt. No. 105]. Ditman then filed a supplemental brief. ("Ditman Supp. Br.") [Dkt. No. 200]. Faulk and Hared joined Ditman's brief. [Faulk Dkt. No. 112]; [Dkt No. 209]. The government also filed a supplemental brief. ("Gov. Supp. Br.") [Dkt. No. 197; Faulk Dkt. No. 109]. JD also filed a supplemental reply. ("JD Supp. Repl.") [Dkt. No. 202; Faulk Dkt. No. 111]. JD then filed a motion for leave to file supplemental briefing, [Dkt. No. 207], which Ditman opposed, [Dkt. No. 208].

I then held a hearing at which the defendants and their counsel, counsel for the government, counsel for JD, and NA (who is an attorney representing himself pro se) appeared.

## LEGAL STANDARD

In the context of recovering "illicit gains from financial crimes," there are three primary ways to compensate victims, each of which is unique: restitution, remission, and restoration.[2] *See* U.S. Dep't of Just., *Asset Forfeiture Pol'y Manual* 14-1 (2023), https://www.justice.gov/criminalafmls/file/839521/download.

Restitution is "the process of determining victim losses for purposes of sentencing and paying victims in criminal cases." *Id.* It is a "court-ordered equitable remedy intended to make crime victims whole and prevent unjust enrichment to the perpetrator." *Id.* Because federal courts do not have an inherent authority to order criminal restitution, they may do so only where explicitly authorized by statute. *See Fed. Ins. Co. v. United States*, 882 F.3d 348, 357 (2d Cir. 2018); *In re Wellcare Health Plans, Inc.*, 754 F.3d 1234, 1239 (11th Cir. 2014); *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003); *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996). The Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, is one such source of statutory authorization. Under the MVRA, where return of the victim's property is not possible, restitution is calculated as "the greater of" "the value of the property on the date of the . . . loss" or "the value of the property on the date of sentencing," less the value of any property returned. 18 U.S.C. § 3663A(b)(1)(B).

Remission and restoration are discretionary procedures intended to provide recovery for victims that incurred pecuniary losses. *Asset Forfeiture Pol'y Manual*, 14-1. Remission occurs in civil or criminal forfeiture proceedings, where the DOJ "solicits, considers, and rules on petitions for payment" that victims can submit. *Id.* Remission is governed by 28 C.F.R. § 9, and for pecuniary loss it is "limited to the fair market value of the property of which the victim was

---

[2] Consider this reasoning from the Second Circuit in *Federal Insurance Co. v. United States*, 882 F.3d 348, 356 (2d Cir. 2018), discussed later in this memo:
> [B]ecause the laws governing restitution and forfeiture are distinct, serving different purposes and applying different standards, [the appellant] has taken two different avenues by which it attempts to obtain essentially the same relief on more or less the same facts, which nevertheless require separate inquiries into the specific procedural limitations and standards applicable in each context. Indeed, for the reasons set forth below, we reach different conclusions with respect to [the appellant's] two applications.

5

deprived as of the date of the occurrence of the loss." 28 C.F.R. § 9.8(c). Restoration is the procedure by which the Attorney General "transfer[s] forfeited funds to a court for satisfaction of a criminal restitution order." *Asset Forfeiture Pol'y Manual*, 14-1.

For restitution under the MVRA, "the district court has no discretion," and it "shall order" that the defendant make restitution to the victim. *United States v. Kovall*, 857 F.3d 1060, 1064 (9th Cir. 2017) (citing 18 U.S.C. § 3663A(a)(1)). Restitution orders under the MVRA are issued and enforced in accordance with the processes in the Victim Witness Protection Act ("VWPA"), 18 U.S.C. § 3664. *See* 18 U.S.C. § 3663A(d). Under the VWPA, "the attorney for the Government" consults with identified victims, to the extent practicable, and then provides the probation office a list "of the amounts subject to restitution." *Id.* § 3664(d)(1). The probation office then submits the presentence report after providing notice to all identified victims of, inter alia, "the amounts subject to restitution submitted to the probation officer," the date and time of the sentencing hearing, and the opportunity "to submit information to the probation officer concerning the amount of the victim's losses," including through a separate affidavit. *Id.* § 3664(d)(2)(A). If the victim's losses are not ascertainable by ten days prior to sentencing, the government attorney must inform the court, and the court sets a date, up to 90 days after sentencing, for final determination of loss. *Id.* § 3664(d)(5). "If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order." *Id.* § 3664(d)(5). "Such an order may be granted only upon a showing of good cause for failure to include such losses in the initial claim for restitutionary relief." *Id.* Victims are not required to participate "in any phase of a restitution order." *Id.* § 3664(g)(1).

Under the Crime Victim's Rights Act ("CVRA"), 18 U.S.C. § 3771, victims are accorded ten specific rights and may file a motion in the district court and writ of mandamus in the appellate court asserting those rights. *Id.* § 3771(a), (d)(3). "The CVRA does not expand the substantive rights to restitution for loss of property and life that were set out in the VWPA and MVRA, but simply repeats that a crime victim has the 'right to full and timely restitution as provided in law.'" *Kovall*, 857 F.3d at 1070 (quoting 18 U.S.C. § 3771(a)(6)). Those rights "shall be asserted"

1   through a motion filed in the district court where the defendant is prosecuted, and if the district

2   court denies relief, the victim may petition the court of appeals for a writ of mandamus. *See id.*

3   (citing 18 U.S.C. § 3771(d)(3)). The CVRA also does not create a cause of action for damages,

4   nor does it create, enlarge, or imply "any duty or obligation to any victim or other person for the

5   breach of which the United States or any of its officers or employees could be held liable in

6   damages." *Id.* § 3771(6); *see also Kovall*, 857 F.3d at 1065.

## DISCUSSION

The victims assert that they told the federal government how much Ethereum was stolen from them, but that somehow this information was not passed along to the attorneys drafting the restitution order, so the ultimate order—which entered what the attorneys requested—provides for much less than what they are owed. They want to amend the restitution orders to include the correct numbers that accurately reflect the value of their Ethereum at the time of sentencing, which had significantly increased in value since the date of theft. The victims ask to do this in two ways, which they pose as alternatives: either reopen sentencing under the CVRA and amend the restitution orders, or alternatively find good cause under the MVRA to amend the restitution order.[3] The defendants argue that the CVRA is merely a vehicle for enforcing the restitution rights provided in the MVRA and does not provide an alternative right or process. The issue here is whether and how the restitution orders can be substantively amended after sentencing.

The plain text of the MVRA and the VWPA seems to preclude the victims' desired relief. The VWPA, which governs the issuance and enforcement of MVRA restitution orders, *see* 18 U.S.C. § 3663A(d), provides that if a victim "discovers further losses" subsequent to sentencing, she may petition the court for an amended restitution order within 60 days of discovery, so long as she shows "good cause for failure to include such losses in the initial claim for restitutionary relief," *id.* § 3664(d)(5). But here the victims did not discover further losses subsequent to sentencing—by their own admissions and documentation, JD knew the number of stolen Ethereum

---

[3] It is undisputed that JD and NA are victims as defined by these statutes. It is also undisputed that the statutes provide for recovery of the value of the Ethereum as of the date of each sentencing. *See* 18 U.S.C. § 3663A(b)(1)(B).

7

1    as of at least March 2021, and NA knew the number as of at least October 2018, when they
2    reported those numbers to the government in their remission petitions.  It is undisputed that the
3    value of the coins was calculable in USD on the date of sentencing.  The victims did not,
4    therefore, "discover[] further losses" after sentencing, as required by the statutory text; instead
5    they learned that the restitution order did not include all of their previously known losses.  Any
6    other interpretation of § 3664(d)(5) would mean that a victim could petition to amend a restitution
7    order whenever she knew of a loss but simply declined to share it in the restitution process.  That
8    would disincentivize the government and victims to get it right the first time, and therefore affect
9    the goal of finality in sentencing (even if this goal is less dominant for restitution orders than for
10   sentences affecting an individual's liberty, *see Fed. Ins. Co.*, 882 F.3d at 364–65).

11   It is possible that the victims here can show good cause under § 3664(d)(5).  *See* Gov.
12   Resp. 6 (suggesting that § 3664(d)(5) provides a basis to amend the restitution order).  This is not
13   a case where the victims were prevented from participating in the restitution process; they knew
14   about it and chose not to.  JD and NA do not dispute that they both received the notices from the
15   U.S. Attorney's Office explaining the dates of the sentencing hearings and their rights to attend
16   and speak, as well as the need for them to "submit proof of [their] loss with all supporting
17   documents" if they were requesting restitution.  *See* [Dkt. No. 183-1] Exs. E, F, H, I, J.  But it is
18   understandable that they chose not to participate.  The notices—which consist of multiple pages
19   completely filled with very small text and no distinguishing emphatic features, like bolded or
20   underlined sections—do not clearly explain that restitution is different from remission, do not
21   provide any notice of the restitution amounts being sought for each victim as required by 18
22   U.S.C. § 3664(d)(2)(A)[4], and do not explain how a victim's participation is not required in the
23   restitution process yet a victim must submit documentation of proof of loss to receive restitution.
24   So, while at least at least three other victims understood the notices and submitted additional
25   documentation, *see* [Faulk Dkt. No. 82], I can see why JD and NA did not.  Indeed, given that the

---

[4] *But see* § 18 U.S.C. 3664(c) (providing that Fed. R. Crim. Proc. 32 is "only rule[] applicable" to orders issuing and enforcing restitution, which in turn requires only that probation conducts an investigation and submits a report with "sufficient information for the court to order restitution").

8

government apparently made two substantial missteps in this case—not communicating between the remission and restitution teams, and not ensuring that probation included the restitution amounts in the notices to victims—JD and NA likely show "good cause" for failing to file a restitution claim.

But both the MVRA and CVRA still require the victims to show that they discovered "further losses" after sentencing, which they cannot do. The victims assert that the CVRA contemplates victims filing motions asserting their rights, including a motion to reopen sentencing to assert their "right to full and timely restitution as provided in law." *See* 18 U.S.C. § 3771(a)(6), (d)(3). But because the CVRA does not create substantive rights and instead "simply repeats" the rights to restitution provided in the MVRA, *Kovall*, 857 F.3d at 1070, the substantive right to restitution that they are asserting is the same as that in the MVRA.[5] And as discussed, that right is governed by § 3664, which only allows issuance of amended restitution orders where the victim first discovers further losses after issuance of the final order. 18 U.S.C. §§ 3663A(d), 3664(d)(5). It is not clear how any of these statutes permit what the victims seek here, given their prior knowledge of loss.

The statutory scheme for restitution also indicates that the government, not the victim, is responsible for pursuing restitution and ensuring the numbers are correct, meaning that even if the government makes a mistake, it is not necessarily within the victim's power to correct it directly. For example, the Ninth Circuit explained that Congress authorized the government, not victims, to appeal restitution orders, noting that the statute provides that the government, not the victim, is "primarily responsible for ensuring proper restitution payments." *Kovall*, 857 F.3d at 1069 (quoting *United States v. Stoerr*, 695 F.3d 271, 279 (3d Cir. 2012)); *see also United States v. Johnson*, 875 F.3d 422 (9th Cir. 2017) (government appeal of MVRA restitution order). The Ninth Circuit has also said that "[t]aking restitution out of the hands of the criminal justice system

---

[5] *See also Fed. Ins. Co.*, 882 F.3d at 357 ("[The MVRA] confers a substantive right to restitution, and the CVRA . . . provides victims with a procedural mechanism to vindicate that right in court." (citations omitted)); *In re Wellcare Health Plans*, 754 F.3d at 1236 (noting that "[t]he CVRA does not provide an independent, substantive basis for restitution" and in that case "the substantive basis for restitution is the MVRA").

and leaving it to private parties is not a result contemplated or countenanced by the MVRA," noting that any other procedure would create a "serious risk that defendants could coerce victims" or collude with them on settlements. *United States v. Hankins*, 858 F.3d 1273, 1277–78 (9th Cir. 2017). The Third Circuit in *Stoerr* emphasized that the "victim's role . . . is limited" in the restitution process, including only conferring with the government, submitting information to probation, "petitioning the district court for an amended restitution award if he or she discovers further losses," and moving to adjust the defendant's payment schedule if necessary. 695 F.3d at 279 (citing 18 U.S.C. § 3664(d),(k),(m)). And while 18 U.S.C. § 3664 outlines the procedure for issuing and enforcing restitution orders, it specifically provides that it does not create a cause of action against the government for applying the section—meaning that if the government makes a mistake in issuance or enforcement, including under the MVRA, a victim cannot sue. *See* 18 U.S.C. § 3664(p). The CVRA contains a similar limitation. *See id.* § 3771(d)(6).

The victims' reliance on *Kovall* does not help their argument. First, they say that *Kovall* stands for the proposition that the CVRA "provides no limit" to file a motion to reopen sentencing and correct a restitution order. *See* JD Mot. at 10. Though not contained within *Kovall*, this is a correct statement of the law. *See Fed. Ins. Co.*, 882 F.3d at 365 ("[R]estitution obligations . . . may [be] modified at any time during the duration of the restitution order if new losses are uncovered and timely announced to the court." (citing 18 U.S.C. § 3664(d)(5)). But the lack of time limit for filing a motion to correct a restitution order does not help the victims here because the problem is not that they are time-barred from bringing this motion; the problem is that they do not meet the substantive requirements of § 3664(d)(5) to amend the order.[6]

*Kovall* also differs from this case because there, the question before the Ninth Circuit was whether a victim-beneficiary of criminal restitution could appeal a restitution order directly, not whether a victim-beneficiary could move to amend a restitution order based on losses that the

---

[6] This is also one of the reasons that the victims' reliance on *United States v. Rechnitz*, is unavailing. No. 16 CR. 389 (AKH), 2021 WL 5232395 (S.D.N.Y. Nov. 9, 2021), *remanded on other grounds*, 75 F.4th 131 (2d. Cir 2023). Though that court determined that the CVRA does not contain a date by which a victim must make a motion for full and timely restitution, *id.* at *3, it did not address whether the victim-movant met the requirements of § 3664(d)(5) or even address this statutory subsection at all.

victim was aware of before the order was finalized. *Kovall*, 857 F.3d at 1063. In *Kovall*, the victim Tribe participated in the restitution hearing, and the district court awarded less than requested, so the tribe appealed. *See id.* The Ninth Circuit held that as a beneficiary of a criminal restitution order, the Tribe had standing to appeal the MVRA award but did not have a right to appeal the restitution order directly. *Id.* at 1069. Instead, the only way to challenge the restitution order was via 18 U.S.C. § 3771(d)(3)—the writ of mandamus procedure provided in the CVRA that allows the victim to petition the court of appeals if the district court denies the relief sought. *Id.* at 1069–70. In other words, the Tribe should have petitioned for a writ of mandamus instead of appealing directly.

Petitioning for a writ of mandamus seems to be the proper procedure here. The district court cannot amend the restitution order unless the requirements of § 3664(d)(5) are met, and as discussed, at least one requirement is not met here. But if the victims believe that the original restitution orders denied them their right to full restitution as provided in § 3663A, they may and should petition the court of appeals for a writ of mandamus under § 3771(d)(3). *Cf. Systemax, Inc. v. Fiorentino*, 283 So. 3d 415, 422 (Fla. Dist. Ct. App. 2019) ("If victims are denied" the right to full and timely restitution, "the CVRA 'provides [them] with a procedural mechanism to vindicate that right on their own behalf' via a 'petition [to] the court of appeals for a writ of mandamus.'" (first quoting 18 U.S.C. § 3771(d)(3); then citing *Fed. Ins. Co.*, 882 F.3d at 357; and then citing *Kovall*, 857 F.3d at 1065, 1072)). This is, at most, what was contemplated by *Kovall*, and what makes most sense here, given the statutory procedural restrictions on district courts. And even though the statute provides a fourteen-day time limit for petitioning for a writ of mandamus after being denied relief by the district court, *see* 18 U.S.C. § 3771(d)(5), as the victims note, the Second Circuit persuasively determined this time limit "does not apply to mandamus petitions challenging restitution orders under the CVRA." *Fed. Ins. Co.*, 882 F.3d at 360. That is because the time limit was imposed to address the often-urgent question of permitting a victim to appear at a hearing, which can arise and may need to be addressed within a matter of days or hours, but the same urgency issues do not arise in restitution orders, which implicate "often-protracted payment obligation[s]." *See id.* at 360–65; *see also id.* at 366–67 (explaining the time period is not

11

limitless and addressing whether that petition was sufficiently timely).

Finally, other cases considering restitution, appeals, and writs of mandamus are factually distinct because they concern the outright denial of restitution, not the grant of restitution in an amount lower than what the victim seeks. *See, e.g.*, *Fed. Ins. Co.*, 882 F.3d at 366–69; *In re Burgess*, 739 F. App'x 169, 171–72 (3d Cir. 2018); *In re Wellcare*, 754 F.3d at 1239–40; *United States v. Guerrero*, No. 14 CR 732-4, 2021 WL 2550154, at *13–14 (N.D. Ill. June 22, 2021), *aff'd*, 37 F.4th 1215 (7th Cir. 2022); *United States v. Petit*, 541 F. Supp. 3d 304, 306 (S.D.N.Y. 2021); *United States v. Fradella*, No. CR 12-207, 2017 WL 3686549, at *2–3 (E.D. La. Aug. 25, 2017).

## CONCLUSION

For those reasons, the victims' requests to reopen sentencing and/or amend the restitution orders are DENIED. The victims may file writs of mandamus in the court of appeals concerning their requested relief.

**IT IS SO ORDERED.**

Dated: April 30, 2024



William H. Orrick
United States District Judge