United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES of AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AHMAD WAGAAFE HARED and MATTHEW GENE DITMAN,<br><br>Defendants. | Case No. 3:19-cr-00040-WHO-1<br><br>**ORDER GRANTING PETITIONS TO AMEND RESTITUTION**<br><br>Re: Dkt. Nos. 265, 266, 268, 284, 288 |
| UNITED STATES of AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY FRANCIS FAULK,<br><br>Defendant. | Case No. 3:19-cr-00676-WHO<br><br>Re: Dkt. No. 122 |

Following remand from the Ninth Circuit and through amended and supplemental petitions ("Petitions"), victims J.D. and N.A. seek amended restitution orders under 18 U.S.C. § 3664(d)(5) setting the restitution amount owed jointly and severally by the three defendants in these two cases at the value of their stolen Ether as of the date of each defendant's sentencing.[1]  The Petitions are GRANTED.  Amended judgments shall be entered against each defendant, holding each jointly and severally liable for restitution to J.D. and N.A. for the value of the Ether stolen from each of them, set at the day high value of the Ether on each defendant's date of sentence.

**BACKGROUND**

Victims J.D. and N.A. reported the theft of their Ether to various government officials, starting with the FBI in 2016, informing those officials of the amount of Ether stolen and the value

---

[1] The administrative motions to seal in Case No. 19-cr-00040 at Dkt. Nos. 284, 288 are GRANTED for compelling justifications shown.

United States District Court
Northern District of California

of the Ether at the time it was stolen ($43,000 for J.D. and $38,885.30 for N.A.). *See In re Davis*, 146 F.4th 710, 715 (9th Cir. 2025). Prior to sentencing and judgment of the three defendants, both victims also informed the government of the significantly increased value of the stolen Ether. *Id*.

I sentenced Faulk on August 17, 2023, Hared on August 31, 2023, and Ditman on October 12, 2023. In each defendant's judgment, I imposed joint and several liability for restitution of $40,000 to N.A. and $43,000 to Davis. I erred for two reasons. First, the "probation office— which receives proposed loss amounts from the United States Attorney's Office—recommended that the defendants pay only $43,000 in restitution to Davis and $40,000 to N.A. Second, the government did not 'ensur[e] that probation included the restitution amounts in the notices to victims.'" *In re Davis*, 146 F.4th at 716. The amounts provided by the United States Attorney's Office, which the probation office and I relied on, were legally erroneous because they reflected the value of the stolen Ether on the date it was stolen. However, "the Mandatory Victims Restitution Act provides the substantive right to restitution in 18 U.S.C. § 663A(b)(1)(B)," and under that provision, I "should have ordered restitution equal to the greater of 'the value of the property on the date of the damage, loss, or destruction,' or 'the value of the property on the date of sentencing.' 18 U.S.C. § 3663A(b)(1)(B)." *Id*. at 720.

J.D. and N.A. assert that they both learned around October 10, 2023, that under the Mandatory Victims Restitution Act ("MVRA"), restitution should have been set at the value of their Ether on the dates of sentencing and that they could file petitions to reopen restitution. *See* Supplemental Declaration of J.D. (Dkt. No. 265-3) ¶¶ 7-8; Affidavit of N.A. (Dkt. No. 92-1 in Case No. 19-cr-00676) ¶ 21. N.A. filed a petition to reopen restitution on November 15, 2023, but filed it only in Case No. 19-cr-00676, as he believed that was the lead case given that Faulk was sentenced first and joint and several restitution was imposed in Faulk's judgment. Case No. 19-cr-00676, Dkt. Nos. 91, 92; *see also* N.A. Supplemental Brief and Joinder (Dkt. No. 268 in Case No. 19-cr-00040) at 9 n. 4.[2] J.D. filed petitions to reopen restitution on November 28, 2023 in both

---

[2] At my recommendation, and even though defendants Hared and Ditman recognized that N.A.'s original petition was aimed at the restitution orders in their judgments, N.A. filed his petition with non-substantive changes in Case No. 19-cr-00040 on January 5, 2024. Case No. 19-cr-00040, Dkt. No. 191.

United States District Court
Northern District of California

cases. Case No. 19-cr-00040, Dkt. No. 174; Case No. 19-cr-00676, Dkt. No. 94.[3]

Considering the Petitions on their merits, I concluded that the victims failed to meet the MVRA's requirements for amending the restitution orders. *USA v. Hared*, No. 3:19-CR-00040-WHO-1, 2024 WL 1898422 (N.D. Cal. Apr. 30, 2024). I noted that if I had discretion to grant relief to the victims, however, the equities weighed in their favor. I suggested that they could file writs of mandamus. *Id*. at *1.

The victims did so, and on appeal, the Ninth Circuit concluded "that the Mandatory Victims Restitution Act, 18 U.S.C. § 3664(d)(5), provides a procedural mechanism for relief under these circumstances," as that provision "permits victims to timely seek an amended restitution order after discovering that the original order did not include losses that, for good cause, were not initially claimed." *In re Davi*s, 146 F.4th at 725. The court explained:

> [A]s in the unusual circumstances here, victims may know the full amount of their losses but not know of the omission of the losses from the initial restitution claim (or, consequently, from the district court's final restitution determination). When the victims learn of the losses omitted from the final determination, that too is a "subsequent[ ] discover[y]" of "further losses" within the meaning of § 3664(d)(5). And there still may be good cause for the failure to include them in the initial claim. Because the Mandatory Victims Restitution Act provides that "[n]o victim shall be required to participate in any phase of a restitution order," 18 U.S.C. § 3664(g)(1), victims may rely on the government to assert their rights to restitution. Petitioners did so, informing the government of the amount of stolen Ether with the expectation that the government would claim their resulting losses. But due to multiple mistakes by the government—including a lack of internal communication, a failure to inform Petitioners of the dollar value being claimed on their behalf, and the under-calculation of Petitioners' losses based on the date of the theft instead of the date of sentencing—the government ultimately claimed only a fraction of Petitioners' losses. As the district court recognized, this likely amounts to good cause for the failure to include all the Petitioners' losses in the initial claim. Like in the case of a surprise medical or repair bill, § 3664(d)(5) provides the process to seek an amended restitution order that includes Petitioners' "further losses."

*Id.* at 726–27.

---

[3] N.A.'s petition in Case No. 19-cr-00676 was filed on November 15, 2023; 91 days after defendant Faulk was sentenced; 77 days after defendant Hared was sentenced; and 35 days after defendant Ditman was sentenced. J.D.'s petitions were filed on November 28, 2023; 104 days after defendant Faulk was sentenced; 90 days after defendant Hared was sentenced; and 48 days after defendant Ditman was sentenced.

However, "that alone does not entitle them to amended restitution orders. They must also show 'good cause' for the omission of those losses from the initial restitution claims presented to the district court." *Id*. at 728.  The Ninth Circuit explained:

> The district court noted that Petitioners could likely show good cause because the omission was due to the Government's errors, not their own. But the district court made no final determination on good cause. Nor did the district court address whether Petitioners sought amended restitution orders within sixty days of discovering their "further losses," or the consequences of missing that deadline. *See Dolan*, 560 U.S. at 611, 130 S.Ct. 2533 (holding that a separate 90-day deadline in § 3664(d)(5) is a non-jurisdictional "time-related directive" that "does not deprive the court of the power to order restitution"). We therefore remand to allow the district court to assess whether Petitioners satisfy those requirements.

*Id*.

On remand, I have two tasks.  First, I must make findings concerning whether good cause has been shown.  Second, I must determine whether the Petitions were timely filed.  For the reasons, discussed below, I find that the victims have shown good cause and that their Petitions were timely filed.  I GRANT the Petitions and require restitution to be amended and awarded jointly and severally against each defendant, valued at the day high of Ether on each date of sentencing.  I also grant the victims' requests for attorney fees, although in an amount less than that requested by victim N.A. because he is proceeding pro se.

## DISCUSSION

### I.    GOOD CAUSE & TIMELINESS

Despite the Ninth Circuit's recognition that in my prior Order I commented that the victims had likely shown good cause and that their Petitions were timely, defendants challenge both of those issues on remand.  I find that both victims have shown good cause and that their Petitions were timely.

#### A.    Good Cause

In my prior Order, I addressed good cause, explaining why it was understandable that the victims did not participate in the restitution setting process (which they were not required to do in any event).  I explained:

> But it is understandable that they chose not to participate. The

4

notices—which consist of multiple pages completely filled with very small text and no distinguishing emphatic features, like bolded or underlined sections—do not clearly explain that restitution is different from remission, do not provide any notice of the restitution amounts being sought for each victim as required by 18 U.S.C. § 3664(d)(2)(A)4, and do not explain how a victim's participation is not required in the restitution process yet a victim must submit documentation of proof of loss to receive restitution. So, while at least at least three other victims understood the notices and submitted additional documentation, *see* [Faulk Dkt. No. 82], I can see why JD and NA did not. Indeed, given that the government apparently made two substantial missteps in this case—not communicating between the remission and restitution teams, and not ensuring that probation included the restitution amounts in the notices to victims—JD and NA likely show "good cause" for failing to file a restitution claim.

*USA v. Hared*, 2024 WL 1898422 at *5.

The Ninth Circuit referenced this discussion in its opinion. "The district court noted that Petitioners could likely show good cause because the omission was due to the Government's errors, not their own. But the district court made no final determination on good cause." *In re Davis*, 146 F.4th at 728.[4] I make that finding now. Good cause has been shown, given: (1) both victims' repeated and adequate efforts to inform the government of their losses; (2) the density of the notices the government sent to the victims and the inadequate explanations of differences between restitution, remission, mitigation, and restoration contained in them; (3) the government's multiple mistakes; and (4) victims are never required to participate in the restitution process under the MVRA.[5]

Defendants point to correspondence J.D. and N.A. sent to various government officials prior to and after the defendants' judgments were entered to argue that these sophisticated victims

[4] *See also id*. at 217 ("The district court denied the motions to reopen on April 30, 2024. The district judge concluded that Petitioners could likely show "good cause" for their failure to participate in the restitution process. Victims, he noted, are not required to participate in the restitution process under the Victim Witness Protection Act, 18 U.S.C. § 3664(g)(1). Moreover, the district court explained that the VNS notices purporting to give notice to Petitioners "do not clearly explain that restitution is different from remission" and "consist of multiple pages completely filled with very small text and no distinguishing emphatic features, like bolded or underlined sections." The district court further highlighted that the government made at least "two substantial missteps" when it failed to communicate Petitioners' losses and failed to inform Petitioners as to the amounts they would receive in restitution.").

[5] N.A. has additional good cause for his reliance on the government to seek the correct amount of restitution in light of personal and family circumstances at the time. *See* N.A. Affidavit (Dkt. No. 92-1 in Case No. 19-cr-00676) ¶¶ 13-14.

United States District Court
Northern District of California

– one an attorney and one an experienced investor – knew prior to August 2023 that they were entitled to significantly larger amounts of restitution from each defendant. *See* Faulk Oppo. (Dkt. No. 134 in case No. 19-cr-00676) at 4-6. Defendants appear to suggest that J.D. and N.A. made some kind of strategic decision to not correct the government's restitution demands in hopes of recovering more through other processes. Correspondence from the victims before or around September 2023, however, supports the confusion the victims had given the technical distinctions between restitution, remission, mitigation and forfeiture, and highlights the deficiencies in the government's notices to the victims. There is nothing in the record before me that supports an inference that these victims made some sort of knowing and strategic decision to not participate in the defendants' sentencings and to wait until November 2023 to raise the issue of legally incorrect restitution.

Ditman separately argues that regardless of whether the victims can show good cause for Faulk or Hared, good cause does not exist with respect to Ditman, who was the last to be sentenced on October 12, 2023. Ditman argues that because the victims had been notified as a result of the prior two sentencings that the value of restitution for their stolen Ether was set at the time of the crime, not the value at time of sentencing, the victims were on notice no later than August 21, 2023, when Faulk was sentenced, of the amount of restitution being sought by the government on their behalf. Ditman argues that the victims should have acted then, prior to Ditman's sentencing, and therefore good cause cannot be shown.

I disagree. I find that there is good cause for the victims' reliance on the government – which bears the responsibility for its missteps – and their confusion whether they were entitled to restitution valued at the time of the defendants' sentencings. I find that the victims did not discover their "further losses" until October 10, 2023, at the earliest.

## B.    Timeliness

18 U.S.C. § 3664(d)(5) provides:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim subsequently discovers further losses, the

victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

### 1.    Discovery of Further Losses

As an initial matter, I agree with J.D. and N.A. that they did not discover their further losses (within the meaning of section 3664(d)(5)) until October 10, 2023, making their Petitions timely under the 60-day provision.

### 2.    In the Alternative

Nonetheless, even if I found that one or more of the victims discovered his further losses earlier and therefore that some or all of the Petitions were untimely,[6] I find that the 60-day time period is a "time-related directive" and not a jurisdictional or mandatory deadline. Regardless, I can accept and grant the Petitions in light of the good cause shown and discussed above.

Faulk argues that under *Dolan v. United States*, 560 U.S. 613 (2010), section 3664(d)(5)'s 60-day deadline is jurisdictional and mandatory. Faulk Oppo.at 7-8. In *Dolan*, the Court addressed the 90–day statutory deadline "for the final determination of the victim's losses" under § 3664(d)(5). It "looked to statutory language, to the relevant context, and to what they reveal about the purposes that a time limit is designed to serve." *Dolan*, 560 U.S. at 610. Considering the relevant factors, the Court determined that the 90-day deadline "seeks speed by creating a time-related directive that is legally enforceable, but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed." *Id*. at 611 ("The fact that a sentencing court misses the statute's 90–day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution."). In reaching that determination, the Court considered: (1) that the MVRA did "not specify a consequence for noncompliance with" the 90-day deadline; (2) the "statute's text places primary weight upon, and emphasizes the importance of, imposing restitution upon those convicted of

---

[6] Ditman acknowledges that J.D.'s petition was filed within 60 days after Ditman's sentencing, but argues because J.D. had knowledge – based on the Faulk and Hared sentencings and his complaints to the government – that he had "discovered" the "further losses" no later than August 21, 2023. As noted above, I reject the argument that discovery occurred for either victim before October 10, 2023.

7

certain federal crimes"; and (3) the "Act's procedural provisions reinforce this substantive purpose, namely, that the statute seeks primarily to ensure that victims of a crime receive full restitution"; (4) to "read the statute as depriving the sentencing court of the power to order restitution would harm those—the victims of crime—who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit"; (5) "neither the language nor the structure of the statute requires denying the victim restitution in order to remedy a missed hearing deadline"; and (6) "defendant normally can mitigate any harm that a missed deadline might cause—at least if, as here, he obtains the relevant information regarding the restitution amount before the 90–day deadline expires." *Id*. at 611-616; *see also id*. at 613 (noting the statute "seeks speed primarily to help the victims of crime and only secondarily to help the defendant"). Faulk argues consideration of these factors leads to the conclusion that the 60-day deadline is jurisdictional or mandatory because, unlike in *Dolan,* this deadline under section 3664(d)(5) is imposed on the parties and not the court.

Faulk also relies on *United States v. McIntosh*, 601 U.S. 330 (2024). There, the Court considered Rule 32.2(b)(2)(B), which provides: "Unless doing so is impractical, the court must enter the preliminary order [of forfeiture] sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant." 601 U.S. at 336–37. The Court concluded that Rule was also a "time-related directive" such that "a district judge's failure to enter a preliminary order prior to sentencing does not deprive a judge of the power to order forfeiture." *Id*. at 338. According to Faulk, the key distinction present in that rule but missing in section 3664(d)(5) is, again, that the rule governed the conduct of "the district court, not the litigants." *Id*. at 341. According to Faulk, in contrast to both *Dolan* and *McIntosh*, the 60-day deadline does not regulate the court but rather the conduct of victims, and a rule acting on the actions of a party to the suit is the "hallmark of a claims-processing rule." Faulk Oppo. at 11-12.

The government and the victims respond that if I reach this issue (and as noted above, it does not need to be reached), the 60-day deadline should be considered a time-related directive. While Faulk identifies one of the factors from *Dolan* and *McIntosh* – that the deadline is imposed

on the court and not the parties – the other significant considerations in those cases support the conclusion that the deadline is a time-related directive.  The purpose of the MVRA is to provide "full" restitution and to protect the interests of the victims.  And there is no consequence specified for non-compliance with the 60-day timeframe in the MVRA.  Those two factors outweigh who the deadline is imposed upon in the statute.

Because I find that the 60-day deadline in section 3664(d)(5) is not jurisdictional or mandatory, and because the defendants have shown no prejudice in allowing the Petitions to be accepted –they were entitled to make all the factual and legal arguments they wanted in proceedings in this court and at the Ninth Circuit – I accept the Petitions based on the discovery of further losses and for good cause shown.

## II.    PRICE

J.D. and N.A. argue that the amount of restitution should be set at the "day high" trading prices for Ethereum on each of the defendants' sentencing dates.   *See* J.D. Supp. Pet. at 12; N.A. Supp. Pet. at 10; *see also In re Davis*, 146 F.4th at 728 ("If the district court determines that Petitioners are entitled to relief, the district court should also consider whether to use the 'day high' price of Ether or some other price marker as of the date of the defendants' original sentencings.").  They rely on *United States v. Gordon*, 393 F.3d 1044 (9th Cir 2004): there, the court affirmed an award where "the restitution amount was determined, by agreement of the parties, by taking the greater of the day high value for each stock on the date it was taken or the day-high value on the date of sentencing." *Id*. at 1052 n.5.

Ditman counters that if I award amended restitution, I "should calculate the restitution amount based on the average price on the date of sentencing.  It is pure speculation that they would have sold the Ether at the day-high price, and given the extreme volatility of Ether pricing on any given day, using the average value is far more reasonable." Ditman Oppo. at 12.  In support, Ditman relies on an expert report, prepared by Jody Bland, a partner at BVA Group and an economist and CFA Charter holder.[7]  Bland's declaration discusses "extreme" volatility in the

---

[7] Bland was retained to address how Ether's value is derived, the value of Ether as of the date of the theft and of the sentencing, volatility in the value of Ether from the date of the theft through

United States District Court
Northern District of California

United States District Court
Northern District of California

market for Ether over the time period in question (*e.g.*, between 2017 and 2018), but does *not* discuss extreme volatility each day.  *See* Declaration of Jody Bland, Dkt. No. 283-4, ¶ 23 (discussing the "extreme volatility" in the value of Ether during 2017 and 2018).

There is no caselaw on this subject.  That said, the MVRA's purpose is to "restore the defrauded party to the position he would have had absent the fraud."  *United States v Gordon*, 393 F. 3d 1044, 1052 (9th Cir. 2004).  In light of the fluctuating value of Ether each day, it seems to me that the defendants, not the victims, should bear the risk of loss.  I conclude that for restitution purposes, the price of Ether should be set at the day high price on the date of sentencing for each defendant.

## III.    EXCESSIVE FINES

As the Ninth Circuit recognized:

> all parties agree that the Mandatory Victims Restitution Act provides the substantive right to restitution in 18 U.S.C. § 3663A(b)(1)(B). Under that provision, the district court should have ordered restitution equal to the greater of 'the value of the property on the date of the damage, loss, or destruction,' or 'the value of the property on the date of sentencing.' 18 U.S.C. § 3663A(b)(1)(B).

*In re Davis*, 146 F.4th at 720; *see also USA v. Hared*, 2024 WL 1898422, at *4 n. 3 ("It is also undisputed that the statutes provide for recovery of the value of the Ethereum as of the date of each sentencing. *See* 18 U.S.C. § 3663A(b)(1)(B).").  For the first time since the original petitions were filed, on this round of briefing and on remand, Ditman argues that imposing restitution based on the value at the time of sentencing – some $7 million for Mr. Ditman – would violate the Eighth Amendment Excessive Fines Clause.  He contends that because restitution under the MVRA is "partly punitive," it is restrained by the Excessive Fines Clause under United *States v. Dubose*, 146 F.3d 1141 (9th Cir. 1998); *see also United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (discussing forfeiture for crime of failing to report currency when leaving country).  He asserts that an award in the millions would not only be grossly disproportionate to the victim's out of pocket losses and to Ditman's modest gains from the crime, but is also fatally speculative given

the date of sentencing, and changes in the market for cryptocurrencies from the date of the theft through the date of sentencing.  Bland Decl., Dkt. No. 283-4, ¶ 4.

that it is unlikely that the victims would have held onto the Ether for the full seven years in light of the extreme volatility in its value during that time. *See* Bland Decl. ¶ 23 (discussing the "extreme volatility" in the value of Ether during 2017 and 2018).

The government and victims respond that I need not consider this newly raised argument because it was not raised in this court in opposition to the initial petitions and, therefore, as the Ninth Circuit concluded, the argument has been waived. *See In re Davis*, 146 F.4th 728 n. 9 ("Faulk also raises an Eighth Amendment proportionality challenge for the first time on appeal. Because he failed to raise this Eighth Amendment argument in the district court, the argument is waived."). J.D. also argues that the remand was for limited issues, and Ditman should not be able to raise new arguments that are outside the scope of that remand. J.D. Reply at 18.

I agree that waiver applies. But even if not waived, the Eighth Amendment argument fails. The Ninth Circuit has recognized, "as we have previously held, '[w]here the amount of restitution is geared directly to the amount of the victim's loss caused by the defendant's illegal activity, proportionality is already built into the order.' *See United States v. Dubose*, 146 F.3d 1141, 1145 (9th Cir. 1998)." *Id*. *Dubose* is on point and binding. "[I]n the restitution context, because the full amount of restitution is inherently linked to the culpability of the offender, restitution orders that require full compensation in the amount of the loss are not excessive." *Dubose*, 146 F.3d at 1146; Govt Resp. at 9-10.[8]

Ditman addresses the waiver issue and *Dubose* in a footnote:

> [T]he Ninth Circuit noted that defendant Faulk raised an Eighth Amendment argument for the first time on appeal. *In re Davis*, 146 F.3d at 728 n.9. The Ninth Circuit deemed the argument waived because Faulk did not raise it in the district court. *Id*. Then it cursorily

---

[8] J.D. points out that courts routinely uphold restitution in amounts that substantially exceed the value of the stolen property. J.D. Resp. at 19; *see also United States v. Gordon*, 393 F.3d 1044, 1052 (9th Cir. 2004), abrogated on other grounds by *Lagos v. United States*, 584 U.S. 577 (2018) (considering the "remedial principles underlying the MVRA and restitution generally" and affirming restitution award exceeding $12.5 million, despite defendant making only $7.5 million and the stock being valued at $6.5 million on date of theft); *United States v. Ichioka*, No. 23-CR-00190-VC-1, 2024 WL 2822926, at *1 (N.D. Cal. June 4, 2024) ("The restitution statute says otherwise—it plainly requires that the defendant pay 'the greater of' those values. 18 U.S.C. § 3663A(b)(1)(B)(i). That makes sense, because Ichioka's fraud prevented victims from capitalizing on positive fluctuations in the Bitcoin market. [] So it is only fair that Ichioka should have to bear that cost.").

referenced *Dubose*, with no meaningful discussion of the arguments there or its holding. *Id*.

The Ninth Circuit's footnote dicta is irrelevant. Because Mr. Ditman *prevailed on procedural grounds* in this Court, which agreed that it cannot reopen the restitution proceedings, he had no opportunity and no reason to bring an Eighth Amendment challenge to a restitution order based on the value to Ether at the time of sentencing. *See, e.g., United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002) ("An issue is not considered waived, however, if a party did not, at the time of the purported waiver, have both an opportunity and an incentive to raise it before the sentencing court or on appeal.").

Furthermore, *Dubose* involved a restitution order for the value of the actual losses suffered by the victims of arson and robbery, not the value of stolen property (let alone such speculative property as cryptocurrency) at the time of sentencing, many years after the offense. Its Eighth Amendment analysis is therefore inapposite here.

Ditman Oppo. at 7 n.9 (emphasis in original).

Simply because this case concerns a different type of property – cryptocurrency – that does not materially distinguish *Dubose*.  The MVRA *requires* restitution to be tied to the specific property at issue and it is the "value of that property" at the time of sentencing that must be accounted for in the restitutionary award.

## IV.    ATTORNEY FEES

Both victims seek to recover the attorney fees they have incurred in the process of filing and litigating their Petitions for amended restitution under 18 U.S.C. § 3663(A)(b)(4).[9]  J.D. seeks $136,193.63 in attorney fees as "other expenses" incurred in litigating this issue in district court and on appeal at the Ninth Circuit and an additional $30,474.90, for attorney fees incurred between the date of Victim J.D.'s opening brief on remand in August 2025 and the present.  N.A. seeks $10,000 in "limited scope" legal consulting fees incurred with respect to the Ninth Circuit proceedings and $40,000 for his pro se work in the District Court, estimated at 100 hours of work and billed at half his corporate rate.

The government and victims argue that the law in this Circuit is clear: "The law is settled that a court may include attorneys' fees in a restitution order when the victim incurred the

---

[9] Section 3663(A)(b)(4) provides restitution includes "in any case, reimburse the victim for lost income and necessary childcare, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."

expenses to participate in law enforcement's investigation and prosecution of a defendant." *United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015); *see also United States v. Afriyie*, 27 F.4th 161, 173–74 (2d Cir. 2022) ("we affirm . . . MSD's expenses for Sullivan & Cromwell's work during the post-verdict restitution proceedings. As a textual matter, expenses like these are subject to recovery under the MVRA. Restitution, as the district court noted, occurs during the sentencing phase of a federal criminal trial. *See* 18 U.S.C. § 3663A(a)(1) (noting that restitution is imposed 'when sentencing a defendant'). Consequently, the expenses a victim incurs while preparing for and participating in restitution proceedings are 'incurred during participation in the ... prosecution of the offense or attendance at proceedings related to the offense' and so may be recovered to the extent the district court finds them necessary. *Id*. § 3663A(b)(4).").

I previously awarded attorney fees incurred in connection with victims seeking restitution in *United States v. Brody*, Case No. 22-cr-00168. That order was affirmed by the Ninth Circuit:

> The district court did not err by including these costs and fees in the restitution order because "a court may include attorneys' fees in a restitution order when the victim incurred the expenses to participate in law enforcement's investigation and prosecution of a defendant." *United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015). Attorneys' fees and costs, however, are limited to those related to "government investigations and criminal proceedings." *Lagos*, 584 U.S. at 581. Here, the district court properly included in the restitution the attorneys' fees incurred by FRB in its participation in (1) the government's investigation, (2) the prosecution of Brody, and (3) the criminal proceedings stemming from both.

> Finally, it was proper for the district court to rely on the Kraus declarations and Forsyth declaration as evidence to support this fee calculation. *See United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (stating that "victim affidavits will generally provide sufficient, reliable evidence to support a restitution order."). Thus, we find no error in the district court's loss calculation or restitution determination.

*United States v. Brody*, No. 23-4358, 2025 WL 1864959, at *3 (9th Cir. July 7, 2025).

The defendants argue that the scope of "other expenses" recoverable under section 3663(A)(b)(4) of the MVRA was limited by the Supreme Court in *Lagos v. United States*, 584 U.S. 577 (2018). There, the Supreme Court clarified that "investigation" and "proceedings" under the MVRA were limited to government investigations and criminal proceedings, and did not extend to private investigations. *See also id*. at 582 (noting the "statute says nothing about the

United States District Court
Northern District of California

kinds of expenses a victim would often incur when private investigations or, say, bankruptcy proceedings are at issue, namely, the costs of hiring private investigators, attorneys, or accountants").  Under *Lagos*, Ditman argues that attorney fees incurred by victims J.D. and N.A. as part of their efforts to secure legally appropriate amounts of restitution are irrelevant to the investigation performed by the government and the restitution recommended by the government and cannot be awarded as "other expenses" under section § 3663(A)(b)(4).  *See United States v. Ichioka*, No. 23-CR-00190-VC-1, 2024 WL 2822926, at \*3 (N.D. Cal. June 4, 2024) ("Arends's request for attorneys' fees is denied. Given that the government has done such a poor job of teeing up the restitution issues for resolution, it's no wonder that victims like Arends took it upon themselves to do some of the government's work for it. But the MVRA does not require defendants to reimburse victims for costs incurred pursuing their own private investigations. *Lagos v. United States*, 584 U.S. 577, 581 (2018).").

Ditman contends that I should not follow *Afriyie* because that decision relied heavily on a binding second circuit opinion[10] (*Amato*) that had rejected the use of *ejusdem generis* to interpret § 3663A(b)(4), which is "clearly irreconcilable" with the statutory construction analysis in *Lagos*, "in particular its reliance on the *noscitur a sociis* canon and its emphasis that "the statute says nothing about . . . the costs of hiring private investigators, attorneys, or accountants." Ditman Oppo. at 18-19.

Here, however, the fees are not sought for private investigations conducted by the victims or accountants in an effort to quantify restitution.  Instead, they are to cover attorney fees in representing (or in N.A.'s case advising) the victims on how to protect their interests and move to correct the restitution orders *in this criminal proceeding*.  The victims are not seeking to recover attorney fees related to investigating the facts surrounding defendants' crimes or how much they are owed.  They want fees for attorney time that was necessary to correct the government's mistakes and pursue the legally correct amount of restitution before this court and the Ninth Circuit.  That the action was already initiated and, indeed, the defendants sentenced *before* the fees

---

[10] *United States v. Amato*, 540 F.3d 153, 159-60 (2d Cir. 2008).

United States District Court
Northern District of California

United States District Court
Northern District of California

were incurred and that these ancillary, post-judgment proceedings were initiated by the victims does not remove them from the scope of "criminal proceedings" related to the criminal offenses. As shown by the participation of the government at each stage, these proceedings continue to be "conducted by the government" even if initiated by the victims. *Lagos*, 584 U.S. at 581; *see also Ellingburg v. United States*, No. 24-482, 2026 WL 135982, at *3 (U.S. Jan. 20, 2026) ("With respect to restitution, the key point is that victims do not have the power to initiate or settle the restitution process as they would if it were a civil proceeding.").

Awarding these fees does not violate the due process rights of defendants or the presumption against fee shifting. Ditman argues that awarding fees to the victims only because his defense counsel opposed the victims' efforts (and thereby provided constitutionally required defense) penalizes defendants for exercising their right to counsel. Ditman Oppo. at 21-22. But the victims are not parties to these criminal proceedings, they are simply protecting their rights in the resolution of the proceedings brought by the government; there is no impermissible "fee shifting." *See Ellingburg*, No. 24-482, 2026 WL 135982, at *3.

Finally, N.A. is not entitled to the estimated $40,000 he claims for personal time he spent as an attorney proceeding pro se pursuing this matter. This lost time (as opposed to out of pocket "expenses") is not recoverable. While section 3663(A)(b)(4) specifically allows for recovery of "lost income," N.A. does *not* claim lost income otherwise due to him because of his need to work on this case pro se. Ditman Oppo. at 22. I find that N.A. is entitled only to the out of pocket amounts he paid to counsel to advise him on how to proceed, which he attests and the defendants do not dispute amounts to $10,000. *See* Ditman Reply at 25.

The motions for attorney fees are GRANTED in full to J.D. and in part to N.A.

## V.   APPORTIONMENT

Finally, Ditman argues that because the MVRA permits but does not require imposition of joint and several liability, the restitution here should be apportioned between the three defendants to reflect Ditman's smaller "role in the offense and minimal benefits therefrom." Ditman Oppo. at

23-25.[11]  I find that I cannot, and even if I were able to, I will not reapportion damages at this juncture.

It is questionable that I have authority to apportion in this proceeding under 3664(d)(5) of the MVRA, as opposed to a proceeding under 3664(h).[12]  Generally, a sentence can be modified only where expressly authorized by statute; the MVRA does not authorize a change from joint and several to apportioned restitution. *United States v. Shuklin*, 748 F. Supp. 3d 534, 542 (S.D. Ohio 2024) (rejecting request to modify joint and several liability; "the Court's independent review of the statutory provisions confirms that no modification of the nature of a defendants' liability for a restitution order exists in any of the cross-referenced provisions.").  Moreover, in his plea agreement, Ditman agreed to pay "full" restitution and agreed the court would not consider his economic circumstances when ordering restitution.  Case. No. 19-cr-00040, Dkt. No. 49, ¶ 9.[13]  Therefore, I do not have authority to consider the request to apportion the restitution at this juncture.

Even if I had the authority, however, I would not exercise my discretion to apportion the restitution.  Joint and several liability remains appropriate for the reasons that existed at sentencing.  Ditman was a significant participant in the crime, even if he did not benefit from it as much as the other defendants.

Ditman's request to apportion liability is DENIED.

---

[11] The government argues only that this argument, like the excessive fines argument, was waived as it was not raised here before or with the Ninth Circuit on appeal.  Govt Response at 3.  I will however consider the argument on its merits.

[12] *See* 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.").

[13]  "I agree to pay full restitution for all losses caused by all the schemes or offenses with which I was charged in this case, and I understand that the amount of restitution will not be limited to the loss attributable to the counts to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3).  I understand that the Court will not consider my economic circumstances in determining the restitution amount.  I agree to pay restitution in an amount to be set by the Court at the time of sentencing and I agree that restitution may exceed $550,000."  Plea Agreement, ¶ 9.

16

**CONCLUSION**

Accordingly, the victims' Petitions to amend restitution are GRANTED. Within 7 days of the date of this Order, the government shall submit a proposed form of amended judgment for each defendant consistent with this Order.

**IT IS SO ORDERED.**

Dated: January 27, 2026

William H. Orrick
United States District Judge

United States District Court
Northern District of California

17